

DEPARTMENT OF THE TREASURY

INTERNAL REVENUE SERVICE

Washington, D.C. 20224

Exhibit 3

**SMALL BUSINESS/SELF-EMPLOYED DIVISION**

# Memorandum of Summons Interview

| | |
|---|---|
| Date: | October 28, 2024 |
| IRS Interviewers in person: | Jean Lane, Revenue Agent |
| | Jeremy Matthews, Revenue Agent |
| | Javier Cortes, OPI Analyst |
| Other IRS Employees present on Teams call: | Bryant Smith, IRS Counsel Attorney |
| | Erika Ramirez-Castillo, Group Manager of Agents Lane and Matthews |
| Others present on Teams Call: | Sanford Boxerman, Attorney for Ana Izquierdo |
| | Michelle Schwerin, Attorney for Ana Izquierdo |
| | Kristen Stokes, Attorney for Ana Izquierdo |
| Interviewee: | Ana Izquierdo |
| Subject: | Interview of Ana Izquierdo for summons served on June 13, 2024 |

On October 28, 2024, starting at approximately 3:15 pm EST, Revenue Agent Jean Lane (hereafter referred to as "Agent Lane") and Revenue Agent Jeremy Matthews (hereafter referred to as "Agent Matthews") of the Internal Revenue Service interviewed Ana Izquierdo, (hereafter referred to as "Izquierdo") at the IRS office located at City View 2, Suite 2000, 48 Carr 165, Guaynabo, PR 00968.

Prior to the interview, on 10/7/2024, Agent Lane and IRS Counsel Attorney Bryant Smith (hereafter referred to as ("Smith") had discussions with Izquierdo's representatives, Attorneys Sanford Boxerman (hereafter referred to as "Boxerman") and Michelle Schwerin (hereafter referred to as "Schwerin") of Neill Schwerin Boxerman, P.C.  Boxerman and Schwerin had informed Agent Lane that Izquierdo did not show up for the summons appearance on July 11, 2024 since she had not received the summons.  It was agreed on this call that Agent Lane would fax the summons to Schwerin and Izquierdo would come to the IRS office in Guaynabo, PR for the summons appearance on October 28, 2024 and she will not argue improper or no service of the summons in future summons enforcement actions.

Izquierdo confirmed her identity and said the following:

Izquierdo is an attorney licensed in Puerto Rico. Izquierdo became an attorney on 2/5/2014. Izquierdo passed the bar exam in Texas, but she is not licensed yet in Texas to practice law. Izquierdo's current practice areas are Business Law, Tax Law, and Puerto Rico Incentives. In the past, Izquierdo has also specialized in HR Law and Anti-Trusts.

Izquierdo said she worked as am employee of TLS, which includes TLS Management and Marketing Services and all other TLS Divisions and related companies (hereafter referred collectively as "TLS"), from April 2017 to February 21, 2021. Izquierdo always worked in Puerto Rico for TLS. She never worked in the U.S. for TLS. Izquierdo said she has not provided any services to TLS since she stopped her employment at TLS.

Izquierdo has never performed services directly for Jeremy Colombik.

Izquierdo has never made CPR presentations to TLS clients.

Izquierdo contributed $100 to ACIH Irrevocable Grantor Trust and the Trust Protector of this trust, Neysa Gonzalez Rodriguez, has not changed.

Izquierdo has not been a Trustee of any other trust used in the Puerto Rico Trust Strategy other than she was Trustee for ACIH Irrevocable Grantor Trust.

Izquierdo is not aware of any ownership changes at TLS in the last 3-4 years and she does not know who currently manages TLS. Izquierdo does not know if David Runge or Richard Colombik still work at TLS.

Izquierdo refused to answer most all questions asked by Agent Lane, invoking Attorney Client Privilege, 5th Amendment and/or Work Product Privilege to most questions. IRS Counsel Attorney Smith discussed that he did not agree Attorney Client Privilege could be invoked in response to some questions, but Boxerman and Schwerin stated that if the Attorney Client Privilege could not be invoked, Izquierdo is still invoking her 5th Amendment Rights. Smith discussed that to invoke the 5th Amendment, the subject must have a fear of incriminating herself. Attorneys Boxerman and Schwerin agreed with Izquierdo invoking the 5th Amendment and other privileges as they were raised, claiming in some cases it could apply as to how she became aware of the information.

Izquierdo answered the following questions, invoking Attorney Client Privilege, 5th Amendment and/or Work Product Privilege as noted:

1) Did you ever write any legal opinions for TLS or for someone else that were used by TLS, or are currently being used by TLS?
   **Attorney Client Privilege and the 5th Amendment**

2) From whom did you first hear about TLS?
   **5th Amendment**

    describe your relationship with this person(s).
**5th Amendment**

3) When did you first start working for Tax Law Solutions ("TLS")?
**April 2017**

4) Were you an employee or contractor?
**Always an Employee**

5) Did you work in Puerto Rico or in the U.S. or both?
**Only in Puerto Rico**

6) Who was your supervisor/boss?
**5th Amendment**

7) Did you sign an employment contract with TLS?
**5th Amendment**

    If yes, describe provision of this contract.
**5th Amendment**

8) How were you compensated by TLS? (ie. Hourly, salary, bonus, etc)
**5th Amendment**

9) What were your job duties at TLS?
**Attorney Client Privilege and 5th Amendment**

10) Are you still employed by TLS?
**No**

    If no, when did you stop employment?
**2/21/2021**

    Why did you stop employment?
**5th Amendment**

11) Have you provided any services to TLS since your stopped employment with TLS?
**No**

12) Have you ever performed other services for TLS outside your employment contracts?
**Attorney Client Privilege and 5th Amendment**

    If yes, scope of services and types of services?
    **Attorney Client and Work Product Privilege and 5th Amendment**

13) Did you perform services directly for David Runge?
    **Attorney Client Privilege and 5th Amendment**

    If yes, describe in detail what services were provided
    **Attorney Client Privilege and 5th Amendment**

    How were you compensated?
    **Attorney Client Privilege and 5th Amendment**

14) Did you perform services directly for Richard Colombik?
    **5th Amendment**

    If yes, describe in detail what services were provided
    **Attorney Client Privilege and 5th Amendment**

    How were you compensated?
    **Attorney Client Privilege and 5th Amendment**

15) Did you perform services for Management Services International ("MSI")?
    **5th Amendment**

    If yes, describe in detail what services were provided
    **Attorney Client Privilege and 5th Amendment**

    How were you compensated?
    **Attorney Client Privilege and 5th Amendment**

16) Did you perform services directly for Jeremy Colombik?
    **No**

17) Did you perform services directly for TLS?
    **5th Amendment**

    If yes, describe in detail what services were provided
    **Attorney Client Privilege and 5th Amendment**

    How were you compensated?
    **Attorney Client Privilege and 5th Amendment**

18) How many hours a week did you perform services for TLS as an employee?
    **Attorney Client Privilege and 5th Amendment**

19) Describe your duties while working at TLS.
 **Attorney Client Privilege and 5th Amendment**

20) Was your compensation ever split up as both W-2 wages and as a contractor in Puerto Rico (480.6B)?
 **Attorney Client Privilege and 5th Amendment**

 If yes, why were you paid this way?
 **Attorney Client Privilege and 5th Amendment**

21) Do/did you ever have ownership in TLS and/or a TLS Division?
 **Attorney Client Privilege and 5th Amendment**

22) Do or did you ever work with TLS clients directly and/or perform services for TLS clients??
 **Attorney Client Privilege and 5th Amendment**

 a. If yes, describe the type of work you did for TLS client.
    **Attorney Client Privilege and 5th Amendment**

 b. Did you meet with the TLS clients directly?
    **5th Amendment**

 c. How was this work billed (ie. Billed to TLS Division, or directly to the client)
    **Attorney Client Privilege and 5th Amendment**

23) What percentage of your time was spent working directly for TLS Clients vs. for TLS?
 **Attorney Client Privilege and 5th Amendment**

24) Were you ever involved with developing the tax positions on strategies taken by TLS or Management Services International ("MSI") on any of the strategies offered by TLS to clients?
 **Attorney Client Privilege and 5th Amendment**

 a. Fringe benefits
    **Attorney Client Privilege and 5th Amendment**

 b. TLS Division (Puerto Rico) providing services to U.S. clients
    **Attorney Client Privilege and 5th Amendment**

 c. Micro-captives
    **Attorney Client Privilege and 5th Amendment**

 d. Deferred compensation
    **Attorney Client Privilege and 5th Amendment**

25) Describe your involvement for each strategy.
    **Attorney Client Privilege and 5th Amendment**

26) Who else was involved in developing the tax position on the strategies?
    **Attorney Client Privilege and 5th Amendment**

27) What would the options be for a TLS client to receive Distributions from their respective TLS Division while you were employed by TLS?
    **Attorney Client Privilege and 5th Amendment**

28) What were clients told about the taxability of distributions they received from their TLS Division while you were employed by TLS?
    **5th Amendment and may also be Attorney Client Privilege**

    Did you agree with this tax position?
    **Attorney Client Privilege and 5th Amendment**

29) What were clients told about taking loans from their TLS Division while you were employed by TLS?
    **Attorney Client Privilege and 5th Amendment**

30) What were the clients told about the taxability of any loans they received from their TLS Division while you were employed by TLS?
    **Attorney Client Privilege and 5th Amendment**

31) Who created the presentations made to potential clients for all of the various strategies offered by TLS?
    **Attorney Client Privilege and 5th Amendment**

32) Who made the presentations to potential clients of TLS to discuss the various strategies offered by TLS?
    **5th Amendment**

33) Who created the original Capital Preservation Report ("CPR")?
    **Attorney Client Privilege and 5th Amendment**

34) Did you assist with drafting a CPR?
    **Attorney Client Privilege and 5th Amendment**

    If yes, what parts?
    **Attorney Client Privilege and 5th Amendment**

35) Did you ever make CPR presentations to clients?
    **No**

36) Do you know who made the CPR Presentations?
    **5th Amendment**

37) Walk through the steps for a CPR presentation made to a client.
    **Attorney Client Privilege and 5th Amendment**

38) What types of services did TLS or a TLS Division provide to the client?
    **Attorney Client Privilege and 5th Amendment**

39) How was the pricing of these services determined?
    **Attorney Client Privilege and 5th Amendment**

40) Who was involved with the pricing of these services?
    **5th Amendment**

41) Did you ever have a discussion with anyone at TLS about recommending a TLS client move their owner and/or their U.S. employees under the TLS Division?
    **Attorney Client Privilege and 5th Amendment**

    If yes, provide details of these discussions
    **Attorney Client Privilege and 5th Amendment**

42) What was the main goal behind moving the client owner and/or employees under the TLS Division?
    **Attorney Client Privilege and 5th Amendment**

43) Was there ever a concern that TLS Clients did not pay adequate wages/payments to Puerto Rico employees to qualify for Puerto Rico Act 20 benefits?
    **Attorney Client Privilege and 5th Amendment**

    Describe the concerns
    **Attorney Client Privilege and 5th Amendment**

44) Who had these concerns?
    **Attorney Client Privilege and 5th Amendment**

**Puerto Rico Trust Strategy**

45) Puerto Rico Trust Strategy means the strategy utilized by TLS to have a Puerto Rico Trust become the owner of each TLS Division.

    Are you familiar with the Puerto Rico Trust Strategy?
    **Attorney Client Privilege and 5th Amendment**

    Who did you first discuss the Puerto Rico Trust Strategy with?
    **Attorney Client Privilege and 5th Amendment**

    When was this?
    **5th Amendment**

46) Who first came up with the Puerto Rico Trust Strategy?
    **Attorney Client Privilege and 5th Amendment**

47) Why was the Puerto Rico Trust Strategy pursued?
    **Attorney Client Privilege and 5th Amendment**

48) Whose idea was it to pursue the Puerto Rico Trust Strategy?
    **Attorney Client and Work Product Privileges and 5th Amendment**

49) Who did the research to come up with the tax position for the Puerto Rico Trust Strategy?
    **Attorney Client and Work Product Privileges and 5th Amendment**

50) What was your role in the development and utilization of the Puerto Rico Trust Strategy
    **Attorney Client and Work Product Privileges and 5th Amendment**

51) What was D. Scott Robinson's role in the development and utilization of the Puerto Rico Trust Strategy?
    **Attorney Client and Work Product Privileges and 5th Amendment**

52) What is David Runge's role in the development and utilization of the Puerto Rico Trust Strategy?
    **Attorney Client and Work Product Privileges and 5th Amendment**

53) What is Richard Colombik's role in the development and utilization of the Puerto Rico Trust Strategy?
    **Attorney Client and Work Product Privileges and 5th Amendment**

54) What is Christopher Hynes' role in the development and utilization of the Puerto Rico Trust Strategy?
**Attorney Client and Work Product Privileges and 5th Amendment**

55) What was Roberto Santos' role in the development and utilization of the Puerto Rico Trust Strategy?
**Attorney Client and Work Product Privileges and 5th Amendment**

56) What is Marilyn Cruz's role in the development and utilization of the Puerto Rico Trust Strategy?
**Attorney Client and Work Product Privileges and 5th Amendment**

57) How did Marilyn Cruz become involved with the Puerto Rico Trust Strategy?
**Attorney Client Privilege and 5th Amendment**

58) Why did you create the ACIH Irrevocable Grantor Trust on 2/1/2019?
**Attorney Client Privilege and 5th Amendment**

   a. Was this Trust utilized in the Puerto Rico Trust Strategy?
   **Attorney Client Privilege and 5th Amendment and potentially Work Product Privilege**

   b. Are you the Grantor and Trustee of this Trust?
   **5th Amendment**

   c. Why was this Trust structured this way?
   **Attorney Client Privilege and 5th Amendment**

   d. Did you contribute $100 to the Trust?
   **Yes**

   e. Are you and WYR 2019-1 both still beneficiaries of his Trust?
   **5th Amendment**

   f. How was the Trust Protector Neysa Gonzalez Rodriguez selected?
   **5th Amendment**

      i. Has the Trust Protector changed?
      **No**

   g. Did you have ownership in a TLS Division or another Puerto Rico Act 20 company that contributed additional assets to the Trust?
   **Attorney Client and Work Product Privilege and 5th Amendment**

59) Why was the Puerto Rico Trust Strategy changed from having a Puerto Rico Trust that has a TLS Client owner as the beneficiary of the trust to having S2C2 Irrevocable Grantor Trust as the beneficiary of all of the TLS Divisions participating in Puerto Rico Trust Strategy?
**Attorney Client and Work Product Privilege and 5th Amendment**

   a. Who determined this change in ownership should be made?
   **Attorney Client Privilege and 5th Amendment**

60) Was anyone at TLS or the consultants for the Puerto Rico Trust Strategy concerned that if the TLS Client owner was the beneficiary of the Puerto Rico Trust, distributions to this trust by the TLS Division would not be considered Puerto Rico source income.
**Attorney Client Privilege and 5th Amendment**

61) What was the role in the Puerto Rico Strategy for each of the following?:

    a. S2C2 Irrevocable Grantor Trust
       **Attorney Client and Work Product Privilege and 5th Amendment**

       Who came up with S2C2 as the Beneficiary of each TLS Division?
       **Attorney Client and Work Product Privilege and 5th Amendment**

    b. WYR 2019-2 Grantor Trust (U.S. Trust)
       **Attorney Client and Work Product Privilege and 5th Amendment**

    c. Sub-trusts
       **Attorney Client and Work Product Privilege and 5th Amendment**

    d. Series LLCs
       **Attorney Client and Work Product Privilege and 5th Amendment**

        i. Why were these used in the strategy?
           **Attorney Client and Work Product Privilege and 5th Amendment**

        ii. Why did Marily Cruz have unused Series LLCs available?
            **Attorney Client Privilege and 5th Amendment**

62) For the original Puerto Rico Trust Strategy where the TLS client owner was the beneficiary of the Puerto Rico Trust:

    a. Who was the grantor of each of these Puerto Rico Trusts?
       **Attorney Client Privilege and 5th Amendment**

    b. Who was the beneficiary of each of these Puerto Rico Trusts?
       **Attorney Client Privilege and 5th Amendment**

63) Were you the trustee of any other trust utilized in any of the Puerto Rico Trust Strategies other than ACIH Irrevocable Grantor Trust?
    **No**

64) Were Series LLCs and Sub-Trusts used in the original Puerto Rico Trust structure?
    **Attorney Client Privilege and 5th Amendment**

65) Who is Meridian Trust Company?
    **5th Amendment**

66) Did you ever work with or for Meridian Trust Company?
    **Attorney Client Privilege and 5th Amendment**

67) During your employment with TLS, did David Runge or Richard Colombik have any ownership interest in Meridian Trust Company?
    **Attorney Client Privilege and 5th Amendment**

    If so, details of ownership
    **Attorney Client Privilege and 5th Amendment**

68) What relationship does TLS, David Runge, and Richard Colombik have with Meridian Trust?
    **Attorney Client Privilege and 5th Amendment**

69) Are you aware of any ownership changes in TLS in the last 3-4 years?
    **No**

70) Who currently manages TLS?
    **Don't know**

**David Runge and Richard Colombik:**

71) What roles/position did David Runge have at TLS when you worked at TLS?
    **Attorney Client Privilege (based on communications) and 5th Amendment**

72) Does David Runge still work at TLS?
    **Don't know**

73) What roles/position did Richard Colombik have at TLS when you worked at TLS?
    **Attorney Client Privilege (based on communications) and 5th Amendment**

74) Does Richard Colombik still work at TLS?
    **Don't know**

75) Based on your observations during your employment at TLS, did David Runge reside in Puerto Rico over half the year during each of your years of employment?
   **Attorney Client Privilege and 5th Amendment**

76) Based on your observations during your employment at TLS, did Richard Colombik reside in Puerto Rico over half of the year during each of your years of employment?
   **Attorney Client Privilege and 5th Amendment**

Agents Lane and Matthews and Counsel Attorney Smith discussed that enforcement actions will be requested for Izquierdo's testimony related to the summons served to Izquierdo on June 13, 2024.

This memorandum of interview was prepared by Agent Jean Lane and finalized on October 31, 2024 after reviewing the notes made during and immediately after the interview with Izquierdo by Agent Lane and Agent Matthews.

Jean A. Lane
Digitally signed by Jean A. Lane
Date: 2024.10.31 09:29:16 -05'00'

_____

Jean Lane, Revenue Agent