IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

|  |  |
|---|---|
| United States of America,<br>Petitioner,<br><br>v.<br><br>Ana Izquierdo,<br>Respondent. | Misc. No. 25-11 (GMM) (Lead Case)<br>Misc. No. 25-12 (GMM)<br>Misc. No. 25-13 (GMM) |

**REPORT AND RECOMMENDATION**

Before the Court is Respondent Ana Izquierdo's second motion to dismiss the Amended Petition at Docket No. 16. See Docket No. 26. Petitioner, the United States of America, on behalf of the Internal Revenue Service ("IRS"), filed an opposition at Docket No. 27. Respondent replied. Docket No. 28. The motion was referred to me for a Report and Recommendation at Docket No. 43. Based upon the parties' motions and the relevant case law, I recommend that the motion to dismiss at Docket No. 26 be **DENIED**.

**I.      Background**

On January 23, 2025, the United States filed a Petition to enforce summons issued by the IRS under 26 U.S.C. §§ 7402(b), 7604(a). Docket No. 3. The United States alleges that the IRS summoned Respondent to appear for an interview on July 11, 2024, in furtherance of an investigation of David Runge, who the IRS is investigating as a suspected promoter of a Puerto Rico Act 60 scheme. Respondent appeared for her interview on October 28, 2024. However, the United States alleges that Respondent failed to comply with the summons because she answered some questions but refused to answer others by invoking her rights under the Fifth Amendment, the attorney-client privilege, and the work product doctrine. The United States asserts that Respondent blanketly invoked her Fifth Amendment right against self-incrimination and requests that the Court order Respondent to show cause as to why she failed to comply with the summons

United States of America v. Ana Izquierdo
Misc. No. 25-11 (GMM)

and to compel her to answer the questions posed by the IRS. Docket No. 1 at pp. 2-3. In support of the Petition, the United States submitted a declaration of IRS agent Jean A. Lane and evidence of the served summons. Docket Nos. 3-1, 3-2. On February 28, 2025, the United States filed an Amended Petition. Docket Nos. 15-16. The United States again argues that Respondent has not met her burden of establishing the applicability of the Fifth Amendment privilege against self-incrimination. In support of the Amended Petition, the United States submitted a supplemental declaration of IRS agent Jean A. Lane with a copy of the IRS Memorandum of Summons Interview, which contains the questions posed by the IRS and Respondent's answers. Docket No. 15-1.

On March 5, 2025, Respondent filed an answer to the Amended Petition and a second motion to dismiss for failure to state a claim. Docket Nos. 25-26. Respondent makes two arguments. First, that she complied with the summons by attending the interview and responding to each question. Second, that the Amended Petition did not contain a specific list of questions that the IRS wished for her to answer and, in any case, that she has invoked the relevant privileges on a question-by-question basis. As an alternative to dismissal, Respondent requests that the Court require the IRS to provide a list of questions for her to substantiate her Fifth Amendment, attorney-client, and work product privileges claims. The United States replied on March 14, 2025, claiming that it established a *prima facie* case for summons enforcement under United States v. Powell, 379 U.S. 48 (1964) and that its Amended Petition satisfied Rule 8(a) of the Federal Rules of Civil Procedure. Docket No. 27. The United States further argued that it already submitted the list of questions at issue when it submitted the IRS's Memorandum of Summons Interview at Docket No. 15-1. Nevertheless, Respondent insists that the United States has not identified the questions for which they seek to compel an answer. Docket No. 28. And that, in the alternative, the Court should provide her with a reasonable amount of time to sustain, *ex parte* and under seal, her privilege claims. Docket No. 28 at p. 3.[1]

---

[1]    In support of her request Respondent submitted two declarations. The first is an affidavit by counsel of Respondent at Docket No. 25-1, which the United States has sought that the Court strike from the record. See Docket No. 31. The matter has not been referred to me, but I nonetheless find no reason to consider the content of that affidavit to make my recommendation on the pending motion to dismiss. The second is a statement from TLS Management & Marketing Services LLC ("TLS"). Docket No. 30-1. In that statement, TLS informs that Respondent, who worked with the company from April 24, 2017, to February 19, 2021, held several positions during her tenure, including Tax Consultant, General Counsel-Tax Consultant, and General Counsel-Director of PR Business Development. And that as member of the TLS legal department during the entirety of her professional relationship with the company she "worked

2

United States of America v. Ana Izquierdo
Misc. No. 25-11 (GMM)

## II.    Legal Standard

A motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure challenges the sufficiency of the pleadings. To survive a motion to dismiss, a complaint must establish "a plausible entitlement to relief." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559 (2007); Rodríguez–Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95 (1st Cir. 2007); FED. R. CIV. P. 12 (b)(6). A claim is plausible when the facts alleged allow for "a reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 663-664 (2009). Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, in considering a motion to dismiss, the Court must accept the well-pleaded factual allegations in the complaint as true and resolve all inferences in favor of the plaintiffs. Mississippi Pub. Employees' Ret. Sys. v. Bos. Sci. Corp., 523 F.3d 75, 85 (1st Cir. 2008); ACA Fin. Guar. Corp. v. Advest, Inc., 512 F.3d 46, 58 (1st Cir. 2008).

## III.    Discussion

### A.    The United States submitted the questions the IRS seeks to compel Respondent to answer.

Pleadings must plainly and briefly state a claim that demonstrates that the plaintiff is entitled to relief. FED. R. CIV. P. 8. Copies of written instruments attached as exhibits to a pleading are "part of the pleading for all purposes," including for Rule 12(b)(6). FED. R. CIV. P. 10; Trans-Spec Truck Service, Inc. v. Caterpillar, Inc., 524 F.3d 315, 321 (1st Cir. 2008). The Memorandum of Summons Interview included by the United States at Docket No. 15-1 includes roughly seventy-six (76) questions, many with several sub-questions which Respondent generally refused to answer in their totality based on a series of privileges.[2] The Respondent does not contest that the Memorandum of Summons Interview accurately represents the events of her interview with the IRS on October 28, 2024. Docket No. 28.

The questions identified in the Memorandum of Summons Interview at Docket No. 15-1, which the United States alleges Respondent refused to answer, form part of Amended Petition.

---

on a variety of legal matters, provided legal advice to the company, and engaged in privileged conversations and other communications." Docket No. 30-1 at p. 8.

[2]    Several questions had multiple parts. On occasion, Respondent answered some component of the question but asserted a privilege for the rest. For example, question ten (10) asked: "Are you still employed by TLS?" As a follow-up, the interviewer asked: "Why did you stop employment?" Respondent seemingly responded "No" to the first question but asserted her Fifth Amendment privilege for the follow up question.

United States of America v. Ana Izquierdo
Misc. No. 25-11 (GMM)

When the United States initiated this enforcement action on the grounds that Respondent improperly declined to respond to specific questions and eventually attached the Memorandum of Summons Interview to the declaration of the IRS agent submitted in support of the petition, the United States effectively put the Respondent on notice of which questions it sought to compel her to answer. Accordingly, Respondent's contention that the enforcement action should be dismissed for failure to provide the questions at issue is without merit. The record plainly identifies the questions underlying the requested relief.

> **B.      Respondent did not make a blanket assertion of the privileges.**

The IRS is responsible for "administering and enforcing the Internal Revenue Code," including those provisions relating to suspected fraud. U.S. v. LaSalle Nat. Bank, 437 U.S. 298, 308 (1978). Special agents are thus undisputedly authorized to issue summons to further a tax investigation. 26 U.S.C. § 7602; U.S. v. Euge, 444 U.S. 707, 710 (1980); Couch v. U.S., 409 U.S. 322, 326 (1973). The IRS' summons powers extend to both taxpayers and third-party record holders. United States v. Arthur Young & Co., 465 U.S. 805, 816 (1984). When summoned, taxpayers have a duty to produce information which may be relevant or material "to an investigation of federal tax liability." Euge, 444 U.S. at 712.

The IRS may petition a district court to compel compliance with its summons when a summoned party has failed to appear for an interview or failed to provide testimony or produce documents as required. 26 U.S.C. §§ 7604, 7609. The enforcement of an IRS summons is contingent on a court's approval and court enforcement of an IRS summons is "summary in nature" and adversarial. U.S. v. Clarke, 573 U.S. 248, 253-254 (2014); U.S. v. Stuart, 489 U.S. 353, 369 (1989). But the IRS is not required to establish probable cause to issue the summons. Rather, the IRS must merely demonstrate that it is conducting a relevant inquiry pursuant to a legitimate purpose. United States v. Powell, 379 U.S. 248, 57-58 (1964).[3] In Arthur Young & Co., the U.S. Supreme Court established that IRS enforcement proceedings do not operate under the same standards as traditional federal civil litigation. 465 U.S. at 814 ("IRS summons [are] not to be judged by the relevance standards used in deciding whether to admit evidence in federal court."). Rather, it held that the language of Section 7602 likely reflects "Congress' express intention" to

---

[3]      The U.S. Supreme Court outlined four factors needed for the enforcement of a summons: (1)"the investigation will be conducted pursuant to a legitimate purpose;" (2) "that the inquiry may be relevant to the purpose;" (3) that such information is not already in the possession of the IRS and (4) adherence to the "administrative steps required by the [Internal Revenue] Code." Powell, 379 U.S. at 57-58.

4

United States of America v. Ana Izquierdo
Misc. No. 25-11 (GMM)

invest the IRS with broad discovery powers that extend even to items of "*potential* relevance to an ongoing investigation, without reference to admissibility." Id. (emphasis in the original). Nonetheless, this is not to say that a taxpayer's duty to produce information may not be limited by the application of "traditional privileges and limitations." Euge, 444 U.S. at 714. As such, "[t]axpayers have Fifth Amendment rights not to be forced to incriminate themselves by the compelled act of production" when summoned. U.S. v. Zhong H. Chen, 813 F. 3d 72, 74 (1st Cir. 2016). And taxpayers may also raise attorney-client privilege in response to questions posed by the IRS. See Arthur Young & Co., 465 U.S. at 818; Cavallaro v. U.S., 284 F.3d 236 (1st Cir. 2002).

A blanket assertion of privilege occurs when the witness refuses to answer questions or produce documents without asserting privilege on a question-by-question or item-by-item basis. See 1 McCormick On Evid. §130 (9th ed.). Such indiscriminate and general assertions are disfavored and insufficient to establish protection as these hinder the court's ability to conduct a "particularized inquiry" to determine whether the privilege applies. In re Grand Jury Matters, 751 F.2d 13, 17 n.4 (1st Cir. 1984) (quoting In re Grand Jury Witness (Salas), 695 F.2d 359, 362 (9th Cir. 1982)); In re Grand Jury Subpoena (Mr. S), 662 F.3d 65, 71 (1st Cir. 2011) (The applicability of a privilege "demands a highly fact-specific analysis— one that most often requires the party seeking to validate a claim of privilege to do so document by document."); Vázquez-Rijos v. Anhang, 654 F.3d 122, 129 (1st Cir. 2011) (failure to make a question by question invocation prevents the court from determining whether a respondents' silence is justified for each specific item requested). There are several circumstances that courts deem impermissible blanket assertions of privilege. For instance, when a party refuses to appear for a scheduled deposition based on an intended invocation of privilege instead of appearing for deposition and *then* refusing to answer specific questions posed. Vázquez-Rijos, 654 F.3d at 128-129 (emphasis added). When a party has generally refused to produce an entire file or broad category of documents without identifying which specific communications are confidential. In re Grand Jury Subpoena (Mr. S.), 662 F.3d at 71. And when a party has refused to answer questions or produce documents based on a general fear of incrimination. U.S. v. Allee, 888 F.2d 208, 212 (1st Cir. 1989).

Having reviewed the Memorandum of Summons Interview, I find that, even though Respondent claimed the application of privileges without explaining the factual basis for each, she did not make a blanket assertion. Respondent did not categorically refuse to answer all questions or produce all information on a single, undifferentiated claim of privilege. Rather, she asserted

5

privileges selectively in response to specific questions. At times, she invoked the Fifth Amendment privilege against self-incrimination; at other times, she asserted attorney-client privilege or the work-product doctrine; and on numerous occasions, she asserted combinations of those protections. This variability demonstrates that Respondent engaged with the substance of each of the questions posed and did not rely on a general refusal to comply.

> **C.** **The Court must evaluate the validity of the asserted privileges.**

Still, the Court must determine whether Respondent's assertions of privilege, made in response to questions by the IRS, were properly asserted and legally sound.

> 1. Fifth Amendment Privilege Against Self-Incrimination

The Fifth Amendment provides a constitutional privilege against self-incrimination, guaranteeing that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V. The privilege protects witnesses and defendants. Lefkowitz v. Turley, 414 U.S. 70, 77 (1973) (citing McCarthy v. Arndstein, 266 U.S. 34, 40 (1924)). It extends to "civil or criminal, administrative or judicial, investigatory or adjudicatory" proceedings in which the witness reasonably believes that her answer could be "used in a criminal prosecution or could lead to other evidence that might be so used." Kastigar v. U.S., 406 U.S. 441, 446 (1972); see also Hoffman v. U.S., 341 U.S. 479, 485 (1951) (the privilege extends to those answers "which would furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime."). However, this protection is not unlimited— a "witness is not exonerated from answering merely because he declares that in so doing he would incriminate himself." Id. at 486. Rather, the witness must have a reasonable cause to fear the potential implications of the answer. Id. To invoke the privilege, the questions posed need not be directly incriminating. U.S. v. Castro, 129 F.3d 226, 229 (1st Cir. 1997). But it must "be evident from the implications of the question, in the setting in which it is asked, that a responsive answer" could be incriminating. Id.; Hoffman, 341 U.S. at 486-487. Courts are charged with determining whether the witness faces the danger of prosecution. Id. at 487; United States v. Donovan, 116 F.4th 1, 7 (1st Cir. 2024) (emphasizing the district court's discretion to determine the witnesses' potential exposure to prosecution).

Respondent claims that the invocation of the Fifth Amendment privilege is justified due to (1) the alleged frequency with which the IRS' "examination division [refers] a promoter investigation for criminal investigation"; (2) the fact that the IRS has declared Puerto Rico Act 60 (formerly Acts 20 and 22) to be a "priority for civil and criminal enforcement;" (3) the terms used

United States of America v. Ana Izquierdo
Misc. No. 25-11 (GMM)

in the petition, including "false," "fraudulent" and "abusive tax shelter;" and (4) the IRS' investigation of entities with which the Respondent was formerly employed. Docket No. 25. And because despite the IRS' assurance that Respondent is not the object of the investigation nor subject to criminal liability, the U.S. Supreme Court has recognized that although initiated "for the purpose of civil action," tax investigations "frequently lead to criminal prosecutions." Mathis v. U.S., 391 U.S. 1, 4 (1968) (holding that tax investigations are not immune from the Miranda requirements). Indeed, some of the questions posed by the IRS, by their nature, could potentially implicate Respondent despite not being directly incriminating. Castro, 129 F.3d at 229 ("If a reply to a seemingly innocuous question reasonably will tend to sculpt a rung in the ladder of evidence leading to prosecution, the privilege appropriately may be invoked."). For example, Respondent claimed her Fifth Amendment privilege in response to a question which inquired about her involvement in developing tax positions on strategies taken by TLS. Docket 15-1 at p. 5. In the context of the IRS' investigation of an abusive tax shelter by TLS, and her former position as General Counsel of the corporation, the answer to that question could conceivably implicate her. See In re Kave, 760 F.2d 343, 355 (1st Cir. 1985) ("to sustain the privilege, it need only be evident that a responsive answer to the question, or an explanation of why it cannot be answered, is potentially incriminating.") (citing Hoffman, 341 U.S. at 486-487).

However, Respondent also invoked the Fifth Amendment in response to seemingly innocuous and non-implicating questions, such as when she heard about TLS, whether she was an employee or contractor, or whether she signed an employment contract. Docket No. 15-1. At this juncture, there is no reasonable basis to conclude that responsive answers to those questions could potentially incriminate Respondent. In re Kave, 760 F.2d at 354 ("the testimony, to be privileged, must have a real and appreciable tendency to incriminate the witness, not merely one that is remote or fanciful") (citations omitted); Hoffman, 341 U.S. at 486 ("The witness is not exonerated from answering merely because he declares that in so doing he would incriminate himself—his say-so does not of itself establish the hazard of incrimination. It is for the court to say whether his silence is justified [...] and to require him to answer if 'it clearly appears to the court that he is mistaken.'") (cleaned up). Because not all of Respondent's refusals to answer on Fifth Amendment grounds are seemingly justified, Plaintiff's enforcement action should not be dismissed.

United States of America v. Ana Izquierdo
Misc. No. 25-11 (GMM)

2.      Attorney-Client Privilege and Work Product Doctrine

To show that a communication is protected by attorney-client privilege, the party asserting the privilege must show: (1) that the party was or sought to be a client of the attorney; (2) that the party sought legal advice from the attorney in his capacity as an attorney; (3) that the communication at issue was confidential and related to legal advice or opinion; and (4) that the protection of the privilege was not waived. F.D.I.C. v. Nash, 1998 WL 34061514 * 2 (D.N.H., Sept. 25, 1998) (citing United States v. Massachusetts Institute of Technology, 129 F.3d 681, 684 (1st Cir. 1997)); Cavallaro v. United States, 284 F.3d 236, 245 (1st Cir. 2002); Lluberes v. Uncommon Prods., LLC, 663 F.3d 6, 24 (1st Cir. 2011). This privilege is to be asserted by the client and not by the attorney. Kevlik v. Goldstein, 724 F.2d 844, 850 (1st Cir. 1984). In the context of an IRS summons enforcement action, the attorney-client privileged is narrowly construed. Cavallaro, 284 F.3d at 245. In turn, the work product doctrine protects from discovery materials prepared "in anticipation of litigation" by a party or a party's representative. FED. R. CIV. P. 26(b)(3); W Holding Co. v. Chartis Ins. Co. of Puerto Rico, 300 F.R.D. 48, 50 (D.P.R. 2014). "The privilege [is] aimed centrally at protecting the *litigation process*, specifically, work done by counsel to help him or her in *litigating* a case." United States v. Textron Inc. & Subsidiaries, 577 F.3d 21, 30–31 (1st Cir. 2009) (emphasis in the original) (citing Coastal States Gas Corp. v. Department of Energy, 617 F.2d 854, 864 (D.C.Cir.1980)). This may be asserted by the attorney but unlike the attorney-client privilege it is qualified. United States v. Nobles, 422 U.S. 225, 239 (1975).

Other than for the statement of TLS informing of Respondent's positions during her tenure at TLS and that she was a member of the TLS legal department during the entirety of her professional relationship with the company, Respondent has not made any effort to establish that the questions posed by the IRS would trigger revealing confidential communications related to legal advice or opinion or that the questions posed would require revealing work done in preparation for litigation. And nothing in the Memorandum of Summons Interview or in Respondent's submissions allows the Court to conclude that she substantiated her privilege claims during the interview or that she provided a sufficient factual basis to support the assertion of those privileges. Indeed, Respondent has not even produced a privilege log that would allow the IRS or the Court to evaluate the propriety of her claim of privileges. It is well settled that a party invoking either of these privileges bears the burden of demonstrating its applicability. FED. R. CIV. P.

8

26(b)(5)(A) (when a party withholds information based on privilege the party is required to expressly make the claim and describe the nature of the documents withheld with specificity so that the other party can assess the claim); <u>Adrian v. Mesirow Financial Structured Settlements</u>, LLC, 647 F.Supp.2d 126, 131 (D.P.R. 2009) (party who invokes the privilege has the burden of establishing the application of the privilege to the contested communication and the burden of showing that such a privilege has not been waived); <u>In re Grand Jury Subpoena (Mr. S)</u>, 662 F.3d at 69, 71 (same). Respondent has not yet met her burden to establish the application of the attorney-client privilege or the work product doctrine to avoid having to answer the questions posed by the IRS. As such, her request for dismissal of the IRS enforcement action at this time should be rejected.

### IV.    Conclusion

While the inherently intermixed civil and criminal nature of the IRS investigative procedure, and the nature of her role at TLS as an attorney in the legal division, support the conclusion that certain inquiries may present a legitimate basis for invoking the Fifth Amendment privilege against self-incrimination, many of Respondent's other refusals to answer would not be substantiated on Fifth Amendment grounds. Moreover, Respondent's assertions of the attorney-client privilege and the work-product doctrine were not substantiated with information that would allow the IRS or the Court to determine the applicability of the privileges. I thus recommend that at this juncture Respondent's motion to dismiss be **DENIED**.

This Report and Recommendation is filed pursuant to 28 U.S.C. §636(b)(1) and Rule 72(d) of the Local Rules of this District Court. Pursuant to Local Rule 72(d), the parties have fourteen (14) days to file any objections to this Report and Recommendation. Failure to file specific objections within the specified time precludes further review. <u>See</u> <u>Thomas v. Arn</u>, 474 U.S. 140, 155 (1985); <u>Davet v. Maccarone</u>, 973 F. 2d 22, 30-31 (1st Cir. 1992); <u>Maisonet v. Genett Group, Inc.</u>, 863 F.Supp.2d 138, 143 (D.P.R. 2012) (absent specific objection, no obligation to review portion of Magistrate Judge's recommendation).

**IT IS SO RECOMMENDED.**
In San Juan, Puerto Rico, this 13th day of May 2026.

s/Giselle López-Soler
GISELLE LÓPEZ-SOLER
United States Magistrate Judge